William Edward DREYER, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–09–00027–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 30, 2010.

Lydia Clay–Jackson, Conroe, for appellant.

Michael C. Young, Conroe, for appellee.

Panel consists of Justices FROST, BOYCE, and SULLIVAN.

## MAJORITY OPINION

KEM THOMPSON FROST, Justice.

Appellant William Edward Dreyer appeals his conviction for theft, claiming that the trial court erred in admitting inadmissible hearsay evidence at the sentencing hearing in violation of his constitutional right to confront witnesses. We affirm.

### I. Factual and Procedural Background

Appellant was charged by indictment with the offense of theft, to which he pleaded "guilty." Appellant also pleaded "true" to three enhancement paragraphs involving prior convictions. The trial judge found appellant guilty as charged and found the enhancement paragraphs to be true.

At the sentencing hearing, the State offered into evidence a pre-sentence investigation report and then rested. Appellant testified, admitted he has been addicted to drugs, and accepted responsibility for his conduct. He stated that he was seeking treatment and rehabilitation for his addiction. The defense rested after several of appellant's family members testified.

The State sought to admit "rebuttal" evidence for the purposes of setting up a predicate. Although appellant indicated he had an objection, he acknowledged that he did not have a legal objection. The trial court did not make a ruling.

The State called an assistant district attorney to the stand. The assistant district attorney testified that she was familiar with a particular deputy, Steve Thompson, who worked as a bailiff in the courthouse. The following exchange occurred during this testimony:

[PROSECUTOR]: And back on—I want to refer your attention back to October 14th, 2008. On that particular date do you recall whether or not the deputy came to inform you of—

[APPELLANT'S TRIAL COUNSEL]: Objection, Your Honor. That's hearsay.

[PROSECUTOR]: I haven't gone into the contents of the statement. If and when I do we are going to be offering it under 803(1), (2), and (6). We have Sergeant Ward in the hallway to prove up the predicate.

[TRIAL COURT]: I will overrule the objection.

[PROSECUTOR]: Now, back on October 14th, 2008, did the deputy come to you to inform you about a statement, actually an admission by a party opponent, that person being the defendant in this cause, Mr. Dreyer?

[WITNESS]: Yes, he did.

[PROSECUTOR]: Did he, along with informing you of the statement, did he inform counsel that was representing the defendant, Mr. Finch?

[WITNESS]: Yes, he did. We were in the jury room and Deputy Thompson came in there to tell us what had happened.

. . .

[PROSECUTOR]: And is it your understanding that Deputy Thompson is here and assigned to this Court to provide security to the Court?

[WITNESS]: Yes.

[PROSECUTOR]: An on that particular date did Mr. Thompson inform you that the defendant had made an admission concerning drug activity and continued use of drug activity?

[WITNESS]: Yes, he did.

The assistant district attorney reviewed an exhibit that had been marked, but not yet admitted into evidence, as State's Exhibit 2 and confirmed that the exhibit appeared to be the court incident security report that Deputy Thompson filed with the district attorney's office. The assistant district attorney did not reveal the contents of the report; however, she identified the initials and signature in the report as belonging to Deputy Thompson and his supervisor. Appellant did not cross-examine the assistant district attorney.

Deputy Thompson's supervisor testified that bailiffs are required to report incidents involving defendants to him, as the bailiffs' immediate supervisor. According to the supervisor, the incident reports are kept in the regular course of business. The State showed the supervisor Exhibit 2; the supervisor confirmed that the exhibit was a regular record kept by his department as a court incident security report. He identified his initials and signature on the exhibit and confirmed that on October 14, 2008, he was Deputy Thompson's immediate supervisor. He did not disclose the contents of the report.

The State sought to admit Exhibit 2 into evidence. Appellant lodged objections on hearsay grounds, lack of notice of extraneous-offense evidence, and on grounds that the evidence violated appellant's rights under the Confrontation Clause. The trial court sustained appellant's objections and the exhibit was not admitted into evidence.[1] Appellant did not cross-examine the supervisor.

The State recalled appellant to testify, as reflected in the following exchange:

[PROSECUTOR]: Sir, earlier I spoke to your counsel concerning an incident that occurred here in the courtroom approximately two weeks or so ago. He then reached over to explain to you what I had told him concerning what we were going to talk about, a certain statement that you made here in court back on the 14th of October of 2008 wherein a bailiff talked to you about that statement. Do you recall any of what I'm talking to you about?

[WITNESS]: I don't recall the statement that was made.

. . .

[PROSECUTOR]: Okay. So is it fair to say that at no point in time did you ever say that when you got out after your parole, when you got out you were going to still do what you were doing, cooking drugs, selling drugs and and [sic] they can catch me if they can?

[WITNESS]: Ma'am, I made a similar statement, but that is not exactly what I said, no.

[PROSECUTOR]: Okay. Do you want to tell us?

[WITNESS]: Can I explain?

[PROSECUTOR]: Surely.

[WITNESS]: I stated that without counsel, without rehabilitation, without supervision I'm going to end up going back to the same things I've always been used to. That's exactly what I said.

Following appellant's testimony, the State rested.

---

1. Exhibit 2 is contained in this court's reporter's record; however, the record does not reflect that it was admitted into evidence at any point during the sentencing hearing and appellant does not show where in the record it was admitted for the trial court's consideration. In Exhibit 2, Deputy Thompson indicated that he heard appellant tell another inmate, "I got four years left and when I get out I am gonna still do what I am doing cooking drugs and selling drugs, and they can catch me if they can."

The trial judge sentenced appellant to ten years' confinement. Appellant now appeals his sentence, claiming that the trial court reversibly erred in admitting inadmissible evidence pertaining to appellant's statement as reflected in the court incident security report.[2]

## II. ISSUES AND ANALYSIS

### A. Did the trial court err in admitting testimony regarding the court incident security report?

■ In his first issue, appellant contends that the trial court reversibly erred in overruling his hearsay objection to the assistant district attorney's testimony regarding the court incident security report. Appellant characterizes the assistant district attorney's testimony as inadmissible hearsay that delved into the content of the report. Appellant asserts that the assistant district attorney's testimony, as hearsay, harmed him because it "opened the door" to the "introduction of statements made to undermine his credibility."

■ Even if we presume that the assistant district attorney's testimony amounted to inadmissible hearsay evidence, appellant has failed to preserve this complaint for appellate review because he did not subsequently object when the State elicited substantially similar testimony from the assistant district attorney. *See Haley v. State*, 173 S.W.3d 510, 516 (Tex. Crim.App.2005). To preserve a complaint for appellate review, a party must make a timely request, objection, or motion with sufficient specificity to apprise the trial court of the complaint. TEX.R.APP. P. 33.1(a); *see Haley*, 173 S.W.3d at 516. An objection must be made each time inadmissible evidence is offered unless a party obtains a running objection or requests a hearing outside the presence of the jury. *See Haley*, 173 S.W.3d at 516–17.

■ Following the testimony to which appellant objected on hearsay grounds, the assistant district attorney confirmed, without any objection from appellant, that Deputy Thompson told her that he overheard appellant make an admission concerning drug activity and continued use of drug activity. Similarly, appellant also testified without any objection that his statement, as overheard by Thompson, meant that without rehabilitation, he would "end up going back to the same things I've always been used to." Therefore, appellant has waived any error as to his complaint because he did not make a subsequent objection when the same evidence was elicited again by the State and he did not procure a running objection to the testimony or request a hearing outside of the jury's presence. *See* TEX.R.APP. P. 33.1(a); *see also Ethington v. State*, 819 S.W.2d 854, 859 (Tex.Crim.App.1991) (involving an appellant that failed to preserve error because, although he objected to the first question posed of a witness as to a certain subject, appellant did not subsequently object to that witness's testimony on the same subject or obtain a running objection). Likewise, although appellant asserts harm from the inadmissible hearsay, the improper admission of evidence is not reversible error when, as in this case, the same or similar evidence is admitted without objection at another point in the trial. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex.Crim.App.1998). We, therefore, overrule appellant's first issue.

2. This appeal was transferred to the Fourteenth Court of Appeals from the Ninth Court of Appeals. In cases transferred by the Supreme Court of Texas from one court of appeals to another, the transferee court must decide the case in accordance with the precedent of the transferor court if the transferee court's decision would have been inconsistent with the precedent of the transferor court. *See* TEX.R.APP. P. 41.3.

**B. Did the trial court err in admitting evidence of the court incident security report in violation of appellant's rights under the Confrontation Clause?**

In his second issue, appellant asserts that the trial court reversibly erred in admitting evidence of Deputy Thompson's court incident security report in violation of his rights under the Confrontation Clause. According to appellant, he was harmed by evidence pertaining to the report because the State relied on the content of the report and did not show that Deputy Thompson was unavailable to testify nor did appellant have an opportunity to cross-examine Deputy Thompson.

To the extent appellant challenges Deputy Thompson's court incident security report, Exhibit 2, on confrontation grounds, the report in question was not admitted into evidence for the trial court's consideration. The record reflects that the trial court sustained appellant's objections at trial to the admission of Exhibit 2 when appellant asserted various objections, including an objection under the Confrontation Clause, to the admission of the report. The record does not reflect that this exhibit was ever entered into evidence. Appellant's argument lacks merit.

To the degree that appellant asserts that the assistant district attorney's testimony pertaining to Exhibit 2 amounts to a violation of his rights under the Confrontation Clause, the record reflects that appellant asserted a hearsay objection to the assistant district attorney's testimony. Appellant has not shown and our independent review of the record does not reflect that appellant made a timely request, objection, or motion with sufficient specificity to apprise the trial court of his complaint asserting violation of his rights under the Confrontation Clause to the testimony by the assistant district attorney. *See* Tex. R.App. P. 33.1(a); *Reyna v. State,* 168 S.W.3d 173, 179 (Tex.Crim.App.2005). An objection based on hearsay does not preserve error on Confrontation Clause grounds. *Reyna,* 168 S.W.3d at 179. The trial court judge did not have an opportunity to rule on an objection for a violation of the Confrontation Clause during the assistant district attorney's testimony. *See id.* Therefore, appellant has failed to preserve his complaint for appellate review. *See* Tex.R.App. P. 33.1(a); *see also Reyna,* 168 S.W.3d at 179 (concluding court of appeals erred in reversing an appellant's conviction on a ground not presented to the trial court). We overrule appellant's second issue.

Having overruled appellant's two issues on appeal, we affirm the trial court's judgment.

SULLIVAN, J., concurring.

KENT C. SULLIVAN, Justice, concurring.

The Court today reaches the correct result. I write separately only to note my concern about what should have been, but apparently was not, a threshold issue—whether the prosecutor should have testified at all in this case. This issue is neither novel nor unique; instead, courts have over time consistently expressed serious concerns about prosecutors as witnesses.[1] *See, e.g., United States v. Bird-*

---

1. The Texas Disciplinary Rules of Professional Conduct also generally discourage the use of lawyers as witnesses. *See* Tex. Disciplinary R. Prof'l Conduct 3.08(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 2005) (Tex. State Bar R. art. X, § 9).

Those rules also acknowledge the special obligations of prosecutors to ensure not only that justice is served but also that the appearance of justice is maintained. *See* Tex. Disciplinary R. Prof'l Conduct 3.08, 3.09 & cmt. 1 ("A prosecutor has the responsibility to see that

*man,* 602 F.2d 547, 551–55 (3d Cir.1979) (echoing disapproval, stated repeatedly by other courts, of the practice of serving as both prosecutor and witness). Generally, when the practice has been allowed elsewhere, it has been only for compelling reasons in extraordinary circumstances. *See id.* at 553. This case clearly does not fit within that category because the record does not suggest *any* compelling reason for one of the prosecutors, who had served as an advocate in the case, to testify on a subject about which she had no personal knowledge.

## I.

In this case, appellant testified that he sincerely sought treatment and rehabilitation, in lieu of incarceration, for an admitted drug addiction. The State, in opposition to this request, sought to admit evidence of a contradictory statement allegedly uttered by appellant while in the custody and presence of sheriff's deputy Steve Thompson.

The State presumably could have avoided the hearsay and Confrontation Clause issues raised in this appeal simply by calling Deputy Thompson to repeat the remarks he allegedly overheard. That is, the record does not suggest Thompson was unavailable to testify.[2] Instead, the State decided to call two other witnesses who had no personal knowledge about appellant's alleged statement, including a prosecutor who had served as an advocate for the State throughout the case. The State recognized that calling one of its prosecu-

tors to the stand was "out of the ordinary" but promised its advocate-witness, Barry Rienstra, would only "set[ ] up for [sic] a predicate" and would not "testify to the specifics about the case."

It never became clear what, if any, evidentiary predicate was to be uniquely achieved by using Rienstra as a witness. Instead, despite the absence of personal knowledge, the prosecutor-witness did testify about the specifics of the alleged statement in which, according to Thompson, appellant indicated his intent to continue with illegal drug activity if given probation.

Even if that hearsay testimony could be considered vital to the State's case for punishment, however, the State failed to prove Rienstra was an appropriate witness—much less the *only* one—who could offer it. Thus, the record does not justify the decision to allow one of the prosecutors to testify as a witness.

## II.

Moreover, there are multiple reasons why prosecutors should not serve in the dual role of advocate and witness. First, the tasks are inherently inconsistent because "the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively." Model Code of Prof'l Responsibility EC 5–9 (1978), *quoted in Birdman,* 602 F.2d at 551. Thus, serving in both roles in the same case could confuse the trier of fact[3] as to whether (and when) the prosecutor is acting in the capacity of advocate, as opposed to witness. *See*

justice is done, and not simply to be an advocate."); *see also* Model Rules of Prof'l Conduct R. 3.8 cmt. 1 ("A prosecutor has the responsibility of a minister of justice and not simply that of an advocate.").

**2.** Counsel for the State implied, at one point, that Thompson may not have been employed by the sheriff's department as of the time of

trial, but his status and whereabouts were never made clear. Whatever his job status at the time, however, there was no suggestion that he was unavailable to testify.

**3.** Presumably, this concern is somewhat diminished in cases, as here, tried to the judge rather than a jury.

*Birdman,* 602 F.2d at 554; Tex. Disciplinary R. Prof'l Conduct 3.08 cmt. 4, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 2005) (Tex. State Bar R. art. X, § 9) ("It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.").

Second, a prosecutor may be unable to participate as a fully objective witness to the extent his interests are aligned with only one of the parties—the State. *See Birdman,* 602 F.2d at 553. And this is a concern coupled with serious risk. An experienced prosecutor with an interest in the outcome would be both poised and motivated to wreak maximum strategic damage to the opposition, if permitted to testify. This concern is magnified not only by the serious liberty interests at stake, but also the widely-held perception that a prosecutor, not unlike other law-enforcement officials, may have enhanced credibility with the public. *Id.* at 553–54. Thus, the adverse consequences of a prosecutor's testimony can be significant.

Third, the prospect of a prosecutor testifying against the accused raises the appearance of impropriety:

> [T]he most frequently cited justification for the [advocate-witness] rule reflects a broader concern for public confidence in the process of justice. The chief fear which underlies the ethical rule ... is not that the testifying prosecutor actually will overreach a hapless defendant, but that he will [a]ppear to a skeptical public to have done so.... Particularly where the lawyer in question represents the prosecuting arm of the Government, the ethical rule serves to implement the maxim that "justice must satisfy the appearance of justice."

*Id.* at 554 (citations omitted). It also places a prosecutor in the presumably very uncomfortable—and optically questionable—role of advocating her own credibility or that of a colleague.

### III.

Perhaps the most troubling aspect of cases like this one, however, is that it can be difficult to gauge the full impact of the sudden transformation of a prosecutor from advocate into witness because some of the effects may be pervasive. Some are transparent, even in a case with a limited record like this one. Here, for example, the trial court and parties grappled with how to apply Texas Rule of Evidence 614, which requires the exclusion of witnesses from the courtroom "so that they cannot hear the testimony of other witnesses," to a prosecutor who already sat through—and participated in—the entire trial.[4] *See* Tex.R. Evid. 614.

Some effects, however, are more difficult to quantify, such as the impact of the prosecutor's decision to testify on defense strategy. Here, although defense counsel voiced concerns, he did not formally object to Rienstra's testimony and made no effort to cross-examine her. To what extent, if any, should we attribute counsel's reticence to a concern that the advocate-witness might later participate in, and even *influence,* important prosecutorial decisions directly and adversely affecting his client? One can only speculate.

No guesswork is needed, however, to conclude that there was relatively little hesitation by the State in calling—or by the trial court in allowing—Rienstra to testify. The court made no inquiry as to the purpose or scope of the prosecutor's

---

4. Defense counsel was forced to concede the point: "I think it's too late for [the Rule] now. She's been in here the whole time [and already heard other witnesses testify]."

intended testimony.[5] No one asked about Deputy Thompson's availability—which could have obviated any need for the prosecutor's testimony—or otherwise questioned the wisdom or necessity of calling Rienstra as a witness.

In part, this may be due to the current Texas standard, which requires a defendant to show *actual prejudice* to obtain reversal of a conviction supported by the prosecutor's testimony. *See House v. State*, 947 S.W.2d 251, 253 (Tex.Crim.App. 1997). Particularly where the effects of a prosecutor's testimony may be insidious and unquantifiable, this standard provides minimal prospective guidance to judges and lawyers to set the outer limits of appropriate prosecutor testimony.[6] Further, the standard provides little disincentive for this unfortunate practice.

The scene of one prosecutor calling another as a witness on a material and disputed fact issue is not a pretty sight. At a minimum, it may leave the impression that the State has placed its thumb on the scales of justice. As such, absent a showing that the testimony is necessary and unavailable from another source, unlike here, we simply should not allow this practice.[7]

Accordingly, I respectfully concur.

---

5. Because this case was tried to the bench rather than a jury, there may have been fewer concerns about the potential for prejudice to the factfinder.

6. We note that both the Texas Supreme Court and Texas Court of Criminal Appeals have struggled in the past to reach a consensus about the proper handling of this advocate-witness issue. *See Anderson Producing Inc. v. Koch Oil Co.*, 929 S.W.2d 416 (Tex.1996) (5–4 decision); *Brown v. State*, 921 S.W.2d 227 (Tex.Crim.App.1996) (5–4 decision); *see also House v. State*, 947 S.W.2d 251 (Tex.Crim. App.1997) (6–3 decision).

7. Even then, a prosecutor who must testify should withdraw from further participation in the trial. *See Birdman*, 602 F.2d at 553 & n. 18.