**Affirmed and Memorandum Opinion filed December 5, 2023.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-22-00510-CR

**BRANDON GIBBS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 2**
**Tarrant County, Texas**
**Trial Court Cause No. 1732158R**

## MEMORANDUM OPINION

Appellant Brandon Gibbs was charged with committing the offenses of family violence assault by occlusion and family violence assault causing bodily injury. The indictment also contained a habitual offender notice. A jury found appellant guilty of both counts, and the trial court assessed his punishment at 40 years in prison for each offense, with the sentences to run concurrently. In a single issue on appeal, appellant contends that the trial court erred in overruling his objection to the prosecutor's statement in closing remarks, which appellant asserts

commented on appellant's decision to not testify. We affirm.[1]

## *Background*

Complainant testified that she and appellant were involved in a romantic relationship. On December 18, 2018, she was at appellant's house while appellant was having a dispute with one of his roommates. She decided to leave, and appellant accused her of leaving to be with another man. Complainant got in her car, and appellant got in the car as well, ostensibly to give her a hug. According to complainant, appellant then grabbed her neck with one hand while punching her in the face with his other hand. She said she "felt the blood splatter" inside her car. Breaking free from his grasp, complainant ran inside the house because she knew that appellant's roommate was in the house. Appellant "cornered" complainant in a bathroom and put her in a chokehold. Eventually, she was able to break free again, and she ran back to her car and drove away.

Complainant stated that she was trying to drive to a hospital when she was pulled over by a police officer. At that point, complainant said that her face was swollen, "[t]here was blood all down the front of her shirt," her "teeth had been slightly knocked out of place," she had marks on her neck, and blood was "splattered inside her vehicle." She explained to the officer what had happened. Complainant also acknowledged in her testimony that she was on felony probation for fraudulent possession of a prescription and tampering with a government license and she had also been convicted of tampering with a government record, forgery, and credit card abuse.

Officer Wechsler testified that on December 18, 2018, he stopped

---

[1] This case was transferred to our court by the Second Court of Appeals pursuant to a Texas Supreme Court transfer order. We must therefore decide the case in accordance with the precedent of the Second Court of Appeals if our decisions otherwise would have been inconsistent with that court's precedent. *See* Tex. R. App. P. 41.3.

complainant for speeding. According to Wechsler, immediately after complainant stopped her vehicle, she "kind of stumbled out of the vehicle and almost doubled over." She seemed very upset and was crying and stumbling over her words. She appeared to have injuries to her face, and there was blood on her shirt. Complainant told Wechsler that she had been at someone's house that she had met recently and when she tried to leave, "she began getting hit in the head." Wechsler became concerned about complainant's medical well-being. Although complainant declined Wechsler's offer to call EMS, he did so anyway. Complainant acknowledged speeding and said that she was headed to the hospital "just up the street." Complainant also informed Wechsler that her driver's license had been suspended, but Wechsler said that he was unconcerned about that at the time because the possible assault was a higher priority. The jury was also shown a video of complainant's interactions with Wechsler taken from Wechsler's patrol vehicle. On cross-examination, Wechsler acknowledged that driving with a suspended license is an arrestable offense.

During closing argument, defense counsel argued that complainant manufactured the assault in order to avoid having Wechsler search her vehicle when he pulled her over for speeding. Counsel asserted, "She's a fraud, she's a thief and she's a liar." Counsel further explained that "they want you to believe that I'm calling her a liar to get out of a traffic ticket. Okay? Far from the truth." Counsel pointed out that at the time she was stopped by Wechsler, complainant was on probation for fraudulent possession of a controlled substance and was driving without a license, and Wechsler could have arrested her for the license offense and inventoried her vehicle. Counsel suggested complainant lied about the alleged assault by appellant to distract Wechsler and keep him from searching her vehicle and potentially finding drugs. Counsel additionally asserted that although

3

complainant claimed to Wechsler that she was speeding toward the hospital, she subsequently declined to be transported to the hospital by EMS and, indeed, failed to continue to the hospital after being stopped.

In her closing argument, the prosecutor stated in relevant part as follows:

Now, I'm trying to unpack what the Defense wants you to believe, right? Because they want you to leave your common sense at that door. Because what is it? Where did the injuries come from? Right? Where did they come from? Because she gets pulled over. She's sobbing hysterically. Listen to it, please. Ask for that video and listen to it again. She's crying. She's immediately gesturing to her face. There is blood on her. There's a lump on her head. And what does she tell the officer? I've been assaulted. What's the theory? She did that to herself? She rearranged her own teeth to the point that they're still messed up to get out of a ticket? . . . Give me a break. She makes herself bleed on her car to get out of a ticket that no one's talked to her about? She volunteers that information [about her license being suspended], right? The officer told you, I didn't have to ask her. She told me.

Where did those injuries come from? Do you think she did those to herself as she pulls over for 30 seconds to get out of a ticket? No. No. Listen to her on that audio. Look at these injuries and ask yourself, where did they come from. *Because the Defense hasn't given you an answer, right?* They want you to believe that this is a mistake.

(Emphasis added.) At this point, defense counsel lodged an objection, which the trial court overruled.[2] On appeal, appellant contends that the prosecutor's argument, particularly the penultimate sentence of the above excerpt, improperly commented on his decision not to testify.

---

[2] The State initially asserts that appellant failed to preserve his issue in the trial court, but defense counsel's objection citing the Fifth Amendment was sufficient under the circumstances to apprise the trial court of the complaint being made. *See generally* Tex. R. App. P. 33.1(a); *Dreyer v. State*, 309 S.W.3d 751, 754 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

*Discussion*

The four areas of permissible jury argument are (1) summations of the evidence, (2) reasonable deductions from the evidence, (3) responses to the defendant's argument, and (4) pleas for law enforcement. *Rocha v. State*, 16 S.W.3d 1, 21 (Tex. Crim. App. 2000). A comment by a prosecutor during closing that refers to a defendant's failure to testify violates the privilege against self-incrimination. *Canales v. State*, 98 S.W.3d 690, 695 (Tex. Crim. App. 2003) (citing U.S. Const. amend. V).[3] To violate a defendant's rights, the comment "must clearly refer to the accused's failure to testify." *Id.* An indirect or implied reference to a defendant's failure to testify does not violate the defendant's privilege against self-incrimination. *Id.*; *see also Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001) ("It is not sufficient that the language might be construed as an implied or indirect allusion."). Rather, "[t]he test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Canales*, 98 S.W.3d at 695. In applying this standard, a reviewing court should consider the context in which the comment was made. *Id.*

A prosecutor is entitled to comment on a defendant's failure to produce testimony from sources other than himself when it is relevant to a disputed issue. *Harris v. State*, 122 S.W.3d 871, 884 (Tex. App.—Fort Worth 2003, pet. ref'd). A prosecutor may comment on the defendant's failure to produce witnesses and evidence so long as the remark does not fault the defendant for exercising his right not to testify. *Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000).

---

[3] Texas Code of Criminal Procedure 38.08 also protects the right to remain silent; however, appellant did not preserve any argument below and does not make any argument on appeal based on that article. Tex. Code Crim. Proc. art. 38.08.

As mentioned, appellant contends that the prosecutor's remarks—especially the sentence, "Because the Defense hasn't given you an answer, right?"—constituted a comment on his decision not to testify. Appellant argues that asserting the defense had no answer regarding the source of the injuries called attention to the absence of evidence that only the defendant could supply, because, according to complainant, she and appellant were the only witnesses to the alleged assault.

We disagree with appellant's interpretation of the prosecutor's words and the context in which they were used. The cited language is not a clear reference to appellant's failure to testify but instead appears to be part of a response to defense counsel's argument that complainant had somehow fabricated or caused her own injuries in order to avoid a search of her vehicle when she was pulled over for speeding and was driving without a valid license. The prosecutor appears to be suggesting that it made no sense that complainant would cause herself to splatter blood in her own car and loosen her own teeth in order to avoid a search and that the defense's explanation for the injuries was really no answer at all to the question of how she got injured. The comment challenges defense counsel's hypothesis; it does not comment on appellant's decision not to testify or call attention to the absence of evidence that only appellant could provide.

The prosecutor's statement certainly was not a direct comment on the absence of testimony by appellant, and given the context in which the statement occurred, we do not believe that it was manifestly intended or was of such character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify. *See Canales*, 98 S.W.3d at 695 (holding, given the context in which it was made, prosecutor's comment was a response to defense counsel's argument and not a reference to defendant's failure to testify); *Ochoa v.*

6

*State*, No. 02-21-00174-CR, 2023 WL 4630637, at \*13 (Tex. App.—Fort Worth July 20, 2023, no pet.) (holding prosecutor's comment that the defendant "knows he's guilty of this" was a response to defense that the case had not been properly investigated and was a comment on the evidence in the case, including the evidence that the defendant had confessed). Accordingly, we overrule appellant's sole issue.

We affirm the trial court's judgment.

/s/ Frances Bourliot
Justice

Panel consists of Justices Wise, Bourliot, and Spain.

Do Not Publish — TEX. R. APP. P. 47.2(b).